**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 21-2093

ARTEM V. GELIS; BHAWAR PATEL; ROBERT
MCDONALD; JAMES V. OLSON; GREGORY HEYMAN;
SUSAN HEYMAN; DEBRA P. WARD; DARRIAN
STOVALL; ALEX MARTINEZ; AMANDA GOREY;
CHRIS WILLIAMS; ASHOK PATEL; KENNETH
GAGNON; MICHAEL CERNY; MARIA MEZA; ANDRE
MALSKE; NICOLE GUY; DAVID RICHARDSON;
STACEY TURNER; ERIC T. ZINN, individually and on
behalf of all others similarly situated

v.

BMW OF NORTH AMERICA, LLC,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-17-cv-07386)
Magistrate Judge: Cathy L. Waldor

Argued on June 7, 2022

Before: AMBRO, RENDELL, and FUENTES, <u>Circuit Judges</u>

(Opinion Filed: September 9, 2022)


Christopher J. Dalton     **(Argued)**
550 Broad Street, Suite 810
Newark, NJ 07102

Jacqueline M. Weyand
Buchanan Ingersoll & Rooney
640 5th Avenue, 9th Floor
New York, NY 10019
        *Counsel for Appellant*

Jay I. Brody
Gary S. Graifman     **(Argued)**
Kantrowitz Goldhamer & Graifman
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645

Randee Matloff
Bruce H. Nagel     **(Argued)**
Nagle Rice
103 Eisenhower Parkway
Roseland, NJ 07068
Thomas P. Sobran
7 Evergreen Lane
Hingham, MA 02043
        *Counsel for Appellees*

## OPINION

AMBRO, <u>Circuit Judge</u>

After the dust settles in a class action lawsuit, lawyers often remain to squabble over class counsel fees. Trying to avoid that fate, the parties here made an agreement: Appellant BMW of North America, LLC would not object to an award up to $1,500,000, and class counsel would not request an award above $3,700,000. BMW now appeals the District Court's approval of a fee award at the upper limit of that range. It argues (1) that the Court's calculation of the "lodestar" (essentially a multiplication of the hours counsel reasonably bill on a case by a reasonable hourly rate) was based on an insufficient record, and (2) that the Court erred in applying a lodestar multiplier to the fee award. We agree with BMW that the lodestar was based on an insufficient record and so vacate the District Court's judgment and remand for further proceedings.

## I. Background

This appeal stems from the settlement of a consumer class action suit filed in 2017 against BMW and its German parent,[1] claiming they knowingly manufactured and sold vehicles equipped with defective N20 and N26 engines. After the District Court granted in part and denied in part BMW's

---

[1] The parties later stipulated to the dismissal of BMW's parent, Bayerische Motoren Werke Aktiengesellschaft, as a defendant.

motion to dismiss, the named plaintiffs filed a Second Consolidated Amended Complaint bringing 20 causes of action under federal and state law, including an alleged breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (a federal fee-shifting statute), breach of the implied warranty of merchantability, violation of various state consumer fraud and deceptive trade practice statutes, and unjust enrichment.

The parties subsequently engaged a mediator and reached a settlement to reimburse class members for expenses incurred and provide them extended warranties. Because they did not know how many consumers would be eligible or make claims for certain benefits, the total value of the settlement was unknown. The District Court nonetheless concluded it was worth at least $27 million. As part of the settlement, the parties "agree[d] to submit the issue of attorneys' fees" to a Magistrate Judge "for final evaluation and decision of the exact amount of . . . fees . . . that should reasonably be awarded in this case." While the Court would have the final say, the parties decided to resolve the fee issue with a "high-low" provision, stipulating that

> Settlement Class Counsel may apply to the Court for an award of attorneys' fees . . . and [BMW] may object to or oppose that application, although [BMW] will not object to Settlement Class Counsel's application for an award of attorneys' fees [of] . . . up to $1,500,000 in the aggregate. While not agreeing to the total amount of such an award, the Parties have agreed that Settlement Class Counsel may apply for an

4

award of attorneys' fees . . . not to exceed $3,700,000 in the aggregate.

*Id.*

Class counsel sought $3.7 million in attorneys' fees, the maximum allowable under the high-low provision, submitting to the Magistrate Judge three charts (one for each plaintiffs' firm) detailing at a summary level the time devoted to various categories of legal work, aggregated across the entire three-year litigation period.

*GELIS, ET AL. V. BMW OF NORTH AMERICA, LLC*
Case No. 17-cv-07386
TIME & LODESTAR CHART (By Category)
FIRM NAME: KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.
PERIOD: Inception to October 30, 2020

| Name/Position | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Graifman, Gary/ P | | 36.6 | 70.1 | 3.6 | 10.4 | 31.1 | 2.8 | 2.0 | 87.9 | 36.4 | 9.2 | 86.0 | 376.10 | $895 | $336,609.50 |
| Provost/ Michelle/ PL | | 10.5 | 1.8 | 27.7 | 4.9 | | | | 0.1 | 2.3 | | | 47.30 | $225 | $10,642.50 |
| Wallis, Kassidi/ PL | | | | | | | | | 2.1 | | | | 2.1 | $225 | $472.50 |
| Dowd, Margaret/ PL | | | 1.5 | 1.0 | | | 0.4 | | 6.9 | | | | 9.8 | $225 | $2,205.00 |
| Chakan, Lisa/ PL | | | 0.9 | 0.7 | | | | | | | | | 1.6 | $225 | $360.00 |
| Brody, Jay/ A | | 29.5 | 27.0 | 1.7 | 34.9 | | | 1.2 | | | | | 94.30 | $625 | $58,937.50 |
| Rothstein, Brandon/ A | | | 0.7 | | | | | | | | | | 0.7 | $500 | $350.00 |
| Baron, Danielle/ PL | | | | | | | | | | | 0.4 | | 0.4 | $200 | $80.00 |

5

| Name/Position | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Hours | Rate | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cherie Cornfield/PL | | | 1.4 | | | | | | | | | | 1.4 | $225 | $315.00 |
| Haque, Sarah / OC | | | | | | | | | | | 0.4 | | 0.4 | $500 | $200.00 |
| Liz Moccia/ PL | | | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | 534.1 | | $410,172.00 |

**CATEGORIES**

1. Pre-Litigation Investigation and Fact Analysis
2. Drafting Complaints (Original, First, Amended Second Amended)
3. Case Development and Case Administration
4. Post Filing Investigation and Communications with Class Members
5. Motion Practice, Drafting Memoranda and Legal Research
6. Court Hearings and Appearances
7. Communications with Consultants/Experts
8. Negotiations and Settlement Process
9. Settlement Documentation, Motions & Briefing (e.g., Prelim & Final Approval
10. Discovery
11. Class Claims Administration Issues and Communications with Class Members/Witnesses re Settlement
12. Final Approval Process, Final Approval Motion and Objection Replies, Communications with Class Members Through Conclusion (NOTE: currently estimated).

Position Key:  P=Partner, SA=Senior Associate, A=Associate, PL=Paralegal

*Id.* at 218–19.

*ARTEM V. GELIS, et al. v. BMW NORTH AMERICA, LLC*
Civil Action No. 17-cv-07386-WHW-CLW

THOMAS P. SOBRAN, P.C. TIME / LODESTAR CHART
PERIOD: Inception to October 31, 2020

| Name/Position | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Thomas P. Sobran / Partner | 60.4 | 115.6 | 118.8 | 158 | 70.8 | 1.5 | 17.4 | 80.1 | 38.4 | 140.5 | 2.4 | 86 | 889.9 | $750.00 | $667,425.00 |

**CATEGORIES**

1. Pre-Litigation Investigation
2. Drafting Complaints (original / amended)
3. Case Development / Administration
4. Post Filing Investigation / Communications with Class Members
5. Motion Practice / Memoranda Drafting / Legal Research
6. Court Hearings / Appearances
7. Communications with Consultants / Experts
8. Negotiation / Settlement Process
9. Settlement Documentation, Motions / Briefing (preliminary / final approval)
10. Discovery Activities
11. Class Claims Administration Issues / Communications with Class Members
12. Future Anticipated Work Hours including Final Approval Process, Final Approval Motion and Objection Replies, Communications with Class Members through Conclusion (NOTE: currently estimated).

*Id.* at 241.

| Name/Position | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Robert H. Soloman, Esq. (P) | 24.8 | 9.5 | .4 | 3.8 | 2.7 | 0 | 0 | 0 | 0 | .5 | 0 | 0 | 41.7 | $800/hr | $33,360.00 |
| Bruce H. Nagel, Esq. (P) | 4.2 | 8.7 | 12.8 | 5.4 | 13.2 | 4.5 | 0 | 27.6 | .8 | 24.1 | 0 | 15 | 116.3 | $900/hr | $104,670.00 |
| Randee M. Matloff, Esq. (P) | 3.3 | 51.6 | 38.6 | 44.7 | 81.1 | 13.3 | 3 | 51.9 | 51.9 | 170.1 | .9 | 72 | 582.4 | $800/hr | $465,920.00 |
| Greg Kohn, Esq. (P) | 0 | 0 | .3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.3 | $650/hr | $195 |
| Zackary Goldberg, Esq. (A) | 0 | 0 | 0 | 2 | 15.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17.5 | $500/hr | $8,750.00 |
| TOTAL | 32.3 | 69.8 | 52.1 | 55.9 | 112.5 | 17.8 | 3 | 79.5 | 52.7 | 194.7 | .9 | 87 | 758.2 | | $612,895.00 |

**CATEGORIES**

1. Pre-Litigation Investigation and Fact Analysis
2. Drafting Complaints (Original, First, Amended Second Amended)
3. Case Development and Case Administration
4. Post Filing Investigation and Communications with Class Members
5. Motion Practice, Drafting Memoranda and Legal Research
6. Court Hearings and Appearances
7. Communications with Consultants/Experts
8. Negotiations and Settlement Process
9. Settlement Documentation, Motions & Briefing (e.g., Prelim & Final Approval
10. Discovery
11. Class Claims Administration Issues and Communications with Class Members/Witnesses re Settlement
12. Final Approval Process, Final Approval Motion & Objection Replies, Communications with Class Members through Conclusion (NOTE: Currently Estimated)

Position Key:  P=Partner, SA=Senior Associate, A=Associate, PL=Paralegal

*Id.* at 254.  In addition, class counsel filed declarations that added more detail about the work completed while still not specifying the time spent on particular tasks, who did those tasks, or the dates they were performed, and declarations that described the experience of each lawyer who billed for the case.  BMW objected to the maximum fee request.  It argued, among other things, that (1) class counsel did not provide enough documentation to support the requested lodestar award, and (2) a lodestar multiplier (a factor by which a lodestar award is enhanced) was unwarranted here.

The Magistrate Judge held a telephonic hearing.  After listening to the parties' arguments, the Court ruled that the summary charts were "more than sufficient" and provided "a good indicator of the time spent."  *Id.* at 436.  Applying the lodestar approach, it adopted class counsel's requested lodestar

7

amount of $1,934,000. It then applied class counsel's requested multiplier of 1.9 to reach a total fee award of $3.7 million—the full amount class counsel sought. BMW now appeals.

## II. Standard of Review[2]

Though we look anew (or *de novo*) at the legal standards used by the Court to calculate a fee award, "so long as it employs correct standards and procedures and makes findings of fact [that are] not clearly erroneous," a district court has discretion to decide the amount of an award. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005) (quoting *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1184 (3d Cir. 1995)). We also require that district courts "clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review for abuse of discretion." *Id.* at 301.

## III. Discussion

### A. Waiver of the right to appeal the District Court's fee determination

Before addressing the merits of BMW's arguments, we address a threshold issue: whether BMW waived its right to appeal the District Court's attorneys' fees ruling through (1) its purported judicial admissions, or (2) by agreeing to submit the issue of attorneys' fees to the District Court "for final evaluation and decision," Appx. at 199. We conclude no.

---

[2] The District Court had jurisdiction under the diversity provision of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). We have jurisdiction under 28 U.S.C. § 1291.

8

As to the former, class counsel contends the "doctrine of 'judicial admissions'" bars BMW's appeal here. Appellee Br. 24 n.18. They point to an exchange between the Court and Christopher Dalton (BMW's counsel) that occurred immediately after it granted class counsel's motion for attorneys' fees. The Court asked Mr. Dalton if there was "anything you need—or I need to put on the record for your purposes." Appx. at 437. Mr. Dalton replied: "Your Honor has already gone through her bases and rationale for making this determination. We put it in the hands of the Court, and you've made your decision, Judge." *Id*.

Case law requires that judicial admissions be "unequivocal" or "deliberate, clear, and unambiguous." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (per curiam) (collecting cases). As Mr. Dalton's statements can be plausibly construed as merely acknowledging the adverse result of the hearing, they do not meet this standard.

Alternatively, class counsel argues BMW waived its right to appeal by agreeing "to submit the issue of attorneys' fees" to the Magistrate Judge "*for final evaluation and decision*" of the fee amount "within the $1,500,000 to $3,700,000 range agreed upon by the Parties." Appx. at 199 (emphasis added). But the plain language of this provision does not explicitly waive either party's right to appeal. Rather, it provides only that the District Court would decide the issue after briefing and argument,[3] plus it is silent as to appellate rights.

---

[3] Class counsel also points to non-published decisions from our Court dealing with high-low fee provisions—*Vargo v.*

9

Our inquiry does not end here, however.  We must also consider whether BMW waived its right to appeal by not explicitly reserving that right in the agreement.  To this, *In re Odyssey Contracting Corp.*, 944 F.3d 483 (3d Cir. 2019), is instructive.  There we considered whether Odyssey waived its right to appeal a bankruptcy court's determination of a payment dispute in an adversary proceeding.  It had signed a stipulation stating that if the Court made a certain determination, "all of the Parties' pending claims will be withdrawn and disposed of in their entirety with prejudice," and the proceeding "shall be deemed to be finally concluded in all respects."  *Id.* at 487–88.  The stipulation was silent on the specific right to appeal.  *Id.* at 488.  After the Bankruptcy Court made the relevant determination, Odyssey appealed the dismissal of its claims to the District Court and, eventually, our Court.  *Id.* at 486.  We held Odyssey had waived its right to appeal because "the party seeking to appeal must make its intent to do so clear at the time of the stipulation."  *Id.* at 489.

In that ruling we distinguished the stipulation in *Odyssey* from class action settlement cases in which other

*Mangus*, 94 F. App'x 941 (3d Cir. 2004), and *Bryan v. Erie Cnty. Off. of Children & Youth*, 637 F. App'x 693 (3d Cir. 2016)—and a New Jersey Supreme Court decision discussing high-low agreements in the context of jury trials—*Serico v. Rothberg*, 189 A.3d 343, 349–51 (N.J. 2018).  But because the attorneys' fees provision at issue here does not include an unambiguous, explicit waiver of appeal, the Third Circuit cases fall off point.  *Serico* is also out of place, as it merely involved enforcing the upper bound of a high-low agreement according to the agreement's plain language.  *Id.*

circuits have required express waiver of the right to appeal when the parties have stipulated that a court will decide a certain issue. *Id*. (citing *In re Deepwater Horizon*, 785 F.3d 986, 997 (5th Cir. 2015); *Montez v. Hickenlooper*, 640 F.3d 1126, 1132 (10th Cir. 2011)). We explained that "[t]he interest at stake in those cases was different from that at issue" in *Odyssey* because "[i]n class actions, settlement agreements cannot be approved unless the court determines that they are fundamentally fair, reasonable, and adequate, the purpose of which is to protect unnamed members of the class from unjust or unfair settlements." *Id*. at 489–90 (internal quotation marks omitted). "[T]hat interest d[id] not apply in [*Odyssey*], which involve[d] a dispute between sophisticated business entities." *Id*. at 490.

As our case presents a situation closer to the class action cases distinguished in *Odyssey*, we hold that stipulations regarding attorneys' fees in class actions must contain an express waiver of appeal. This tracks our case law in this area, which recognizes that the "unique relationship among plaintiffs' counsel, plaintiffs, and defendants in class actions imposes a special responsibility upon appellate courts to hear challenges to fee awards." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 728 (3d Cir. 2001). Because BMW did not expressly waive its right to appeal the District Court's fee determination, it preserved that right.

**B. Sufficiency of the record underlying the District Court's lodestar calculation**

With waiver out of the way, we turn to the merits. BMW argues the District Court granted class counsel's fee request on an insufficient record. We agree.

11

For context, there are two main ways to calculate attorneys' fees: the percentage-of-recovery method and the lodestar method. *See Cendant*, 243 F.3d at 732. The former is as simple as it's named. "Lodestar," though, is a term-of-art used by courts to denote an award that is "calculated by multiplying the number of hours [the lawyer] reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorney[]." *Rite Aid*, 396 F.3d at 305. These approaches are typically employed in different contexts. While the "percentage-of-recovery method is generally favored in cases involving a common fund," the lodestar method, pioneered by our Court in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973), "is more commonly applied in statutory fee-shifting cases . . . ." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998). The lodestar approach may also be used in cases, such as here, "where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method."[4] *Id*.

As such, was the District Court's calculation of the lodestar award based on a sufficient record? Our case law requires that "[a]ny hours to be used in calculating attorneys' fees . . . be detailed with sufficient specificity." *Keenan v. City of Philadelphia*, 983 F.2d 459, 472 (1992). In other words, the

---

[4] As BMW does not challenge the District Court's choice to use the lodestar method, we do not question that aspect of its ruling.

12

fee application must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (internal quotation marks omitted). The petition should therefore "include 'some fairly definite information as to the hours devoted to various general activities, e.g.[,] pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.'" *Keenan*, 983 F.2d at 473 (quoting *Rode*, 892 F.2d at 1190). "[I]t is not necessary," however, "to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Rode*, 892 F.2d at 1190 (internal quotation marks omitted).

BMW argues the summary charts submitted by class counsel cannot justify the award because they "do not detail in any explicit manner how the total hours worked . . . were generated." Appellant Br. at 14. In particular, it contends the charts "provided no dates to inform the District Court of when the task was performed; nor . . . information to show what any *specific* activity was, how much time was devoted to any *specific* activity, on any *specific* date, by which *specific* individual, for a particular charge." *Id*. at 15 (citing Appx. at 218–19, 241, 254) (emphases in original). As an initial observation, we note that the summary charts total only *three pages* but purport to summarize hours billed across a *three-year* period. And while the charts do provide some information about the hours devoted to litigation activities (such as "Discovery Activities," "Pre-Litigation Investigation," "Drafting Complaints (original/amended)"), the hours billed by each attorney are aggregated across the entire three-year litigation period. Appx. at 218–19, 241, 254. That sort of

aggregation, without more detail, is an insufficient basis for an attorneys' fee award.[5] *See Keenan*, 983 F.2d at 473 (portion of fee petition consisting of summaries detailing "only monthly cumulative totals of [attorney's] hours" was not "sufficiently specific").[6] We simply cannot discern from the charts whether certain hours are duplicative (a determination that is particularly crucial here, given that three plaintiffs' firms seek fees for performing the same categories of work) or whether the total hours billed were reasonable for the work performed.

In a last-ditch attempt to salvage the award, class counsel asserts they "offer[ed] to provide the [District Court] with several hundred pages of contemporaneous billing records," but it declined the offer. Appellees Br. at 30. While

---

[5] Class counsel caution against restricting our review to the summary charts, pointing to, among other things, their declarations "describing discrete tasks engaged in by each firm." Appellees Br. at 30. But the declarations do not associate the discrete tasks with particular time-keepers or the time spent on the tasks detailed therein. More fundamentally, there is no way to use those declarations with the summary charts (and other information provided) to discern whether the hours reported by class counsel were reasonable for the work performed.

[6] BMW also argues the summary charts "do not comply with the District of New Jersey's requirements for fee applications," as laid out in that Court's local rules. *See* Appellant Br. at 30; D.N.J. L. Civ. R. 54.2. While we may overturn a district court's ruling for failing to abide by its own local rules in some circumstances, *see Advanced Fluid Systems, Inc. v. Huber*, 958 F.3d 168, 181 (3d Cir. 2020), we need not reach this issue here, as we are overturning the fee award on an alternative ground.

14

not required, "contemporaneously recorded time sheets are the preferred practice." *Keenan*, 983 F.2d at 472 (alteration adopted) (quoting *Webb v. Cnty. Bd. of Educ.*, 471 U.S. 234, 238 n.6 (1985)). And that preference is especially strong here, where class counsel's summary charts were so condensed, high-level, and lacking in specific detail that we would likely need the underlying billing records to parse them. So class counsel's mere offer to provide the District Court more documentation does not cure the Court's failure to take counsel up on that offer and review the complete records. As its lodestar award was thus based on an insufficient record, we vacate its order and remand for further proceedings.

**C. The propriety of applying a lodestar multiplier to the fee award**

BMW also argues the District Court improperly applied a lodestar multiplier to class counsel's fee award. It cites *Perdue v. Kenny A. ex rel. Winn*, in which the Supreme Court held that "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. 542, 554 (2010). Because *Perdue* concerned federal fee-shifting statutes, *id*. at 547, the parties disagree about whether it applies here. Class counsel maintains *Perdue* does not govern, as our matter "is not a pure statutory fee shifting case because it encompasses common law counts including unjust enrichment, equitable relief claims, and breach of express and implied warranty counts which survived BMW['s] motion to dismiss." Appellees Br. at 38. BMW, on the other hand, contends "multipliers are inappropriate where fees are based on a fee-

15

shifting statute, determined by a lodestar calculation, as they were here." Reply Br. at 11.

As we vacate and remand the District Court's fee award because the lodestar calculation was based on an insufficient record, we decline to decide whether the District Court was bound by the strictures of *Perdue* in considering a fee enhancement. We do, however, note two things for the parties and the Court to consider on remand. First, we think the parties' focus on the statutes under which named plaintiffs sued is misplaced, as the "Court awarded the attorney's fees pursuant to a contract—the settlement agreement—not pursuant to a statute." *In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019); *see also Brytus v. Spang & Co.*, 203 F.3d 238, 246 (3d Cir. 2000) ("When there has been a settlement, the basis for the statutory fee has been discharged, and it is only the fund that remains."). Second, we urge the District Court on remand to provide additional reasoning for its decision whether to add a lodestar multiplier. In the fee hearing, the Court explained it would add a multiplier of 1.9 because it "is well within approved multipliers in our jurisdiction," and because the award "falls well within the appropriate *Gunter* factors." Appx. at 437 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)). This is not enough reasoning to give us "a sufficient basis to review" its fee enhancement. *Rite Aid*, 396 F.3d at 301.

\* \* \*

In their class action settlement the parties agreed to cabin class counsel's attorneys' fees request within a high-low range, subject to final determination by the District Court. Though it granted a fee award at the high end of that range, its calculation was not supported by the record before it. Because

16

we cannot tell whether the hours class counsel billed were reasonable for the work performed, we vacate the Court's order and remand for further proceedings.